Anderson *vs.* Green.

JOHN ANDERSON, plaintiff in error, *vs.* MOSES P. GREEN, executor, defendant in error.

1. Where a verdict is plain and unmistakable in its terms and legal effect, it is error in the Court to permit counsel for the party against whom the verdict is rendered to interrogate the jury, on the reading of the verdict by the Clerk, as to what they intended by their verdict. The verdict in such a case not being ambiguous must speak for itself.

2. Where a legatee files a bill against the executor of the will under which the complainant claims, to compel the payment of his legacy and the executor sets up the defense of *plene administravit præter*, which is controverted by the complainant and the jury found the following verdict: "We the jury find the sum of $5,000, with legal interest thereon, from the 24th day of November, 1855, for the complainant, John Anderson, to be raised out of the estate of A. H. Anderson, deceased, in the hands of Moses P. Green, executor," the complainant is entitled to a judgment *de bonis testatoris et si non de bonis propriis.*

3. The decree of the Chancellor should conform to the verdict. Where a decree was rendered by the Chancellor not conforming to the verdict and pending a motion by defendant for a new trial, complainant excepted to the decree rendered and brought the case to this Court, where the bill of exceptions was dismissed, as prematurely sued out, and at the hearing of the motion for a new trial, complainant again moved to reform the decree, so as to make it accord with the verdict, which motion to reform the Chancellor again entertained and overruled, and also granted the new trial, to all of which complainant excepted within the thirty days required by the statute, he is not estopped from assigning error upon the ruling of the Chancellor refusing to reform the decree.

4. Where the verdict of the jury is for a sum not more than the evidence shows the complainant is entitled to, a new trial will not be granted because they may have arrived at the result by an erroneous calculation—conceding that in this case the mode of calculation adopted by the jury was erroneous.

5. It is not error in the Court to refuse to strike from a panel of twenty-four jurors a juror somewhat deaf, at the instance of defendant, who himself struck the juror in selecting a jury, and from which refusal no damage is shown to have resulted to the defendant.

6. That there was a substitute for the juror selected by the parties, who answered to the name of his principal, is no ground for new trial, it not appearing that both substitute and principal were unknown to defendant and his own counsel.

7. We find no error in the verdict.

8. A portion of an answer which is not responsive to the bill is not evidence for the defendant.

Anderson *vs.* Green.

9. Probate of a will in common form unattacked for seven years, is conclusive, upon all parties in interest, except minor heirs-at-law.

10. A legatee is not barred from asserting his claim to a legacy against the executor where suit is brought within ten years after the legatee arrives at age.

11. Where a will has been proved in common form for more than seven years, a legatee does not waive the estoppel thereby created by filing his bill against the executor for an account and discovery.

12. Where the verdict is in no view for more than the complainant is entitled to recover, an immaterial charge as to one item claimed in the bill is no ground for a new trial, even conceding such charge to be erroneous.

12. An executor who, by the will of his testator (probated in 1853, and by which a solvent estate of more than $200,000 is committed to his hands), is directed to move a slave to a free State, to be there manumitted, and to invest for such manumitted slave, on his arrival at age, which occurs in 1862, $3,000, cannot, after refusing to execute the bequest of his testator until the close of the war, free himself from liability by showing that the estate has perished on his hands from the results of the war and other causes.

14. A provision in a will probated in 1853, directing a slave to be sent to a free State and there manumitted and provided for, was not in violation of the law of Georgia at that time.

15. The law presumes a testator, in making his will, to have had a legal intention in view until the contrary is shown.

16. If an executor buy land of his testator at his own sale, the purchase is voidable at the election of a legatee.

17. Where an executor relies on the defense of *plene administravit*, it is not error in the Court to charge the jury " if you find from the evidence there has been no full and complete administration of the assets of the estate, then this plea of defendants fails, and your verdict may also be against the assets in his hands to be administered, or in default of such assets, against his personal goods."

18. The executor in this case, having made himself personally liable by his neglect for the payment of complainant's legacy, before any law existed authorizing him to invest in Confederate securities without an order of Court, the charge complained of in the 33d ground for new trial is immaterial.

19. An executor, who has willfully or negligently mismanaged the property in his charge to the injury of a legatee, cannot avail himself of the provisions of the Relief Act of October 13th, 1870, when sued by such legatee.

20. That the name of one of the persons who tried the case is not upon the jury list of the county, as made up in conformity to the Act of the General Assembly of February 15th, 1865, is an objection *propter de-*

*fectum,* and comes too late after verdict, though the party objecting
did not know the fact until after the trial.   40 Ga. 253.
21. Jurors cannot be heard to impeach their verdict.

Verdict.   Practice.   Decree.   *Plene administravit præter.*
Juror.   Probate.   Statute of limitations.   Estoppel.   Im-
material error.   Manumission.   Presumption.   Purchase by
executor.   Relief law.   Before Judge GIBSON.   Burke Su-
perior Court.   May Term, 1871.

John Anderson filed his bill against Moses P. Green, as
executor of Augustus H. Anderson, deceased, making the
following case:   Augustus H. Anderson died in the year
1853 testate, leaving a large estate of realty and personalty.
The sixth and seventh items of his will were as follows, to
wit:

"Item 6th. I desire and direct that my executors cause to
be removed to a free State and there emancipated, John, son
of my negro woman slave, Louisa; that they pay the ex-
penses of such removal, and for the reasonable support and
schooling of said John until he is put to a trade, and that
when, if he do reach the age of twenty one years, they invest
and secure for his benefit, as they may deem best, the sum of
$3,000, to be raised out of my estate."

"Item 7th. I desire and direct that my negro slave Lou-
isa, mother of said John, shall be kept at my Burke planta-
tion until January 1st, 1875, that she be kindly treated and
provided for; that she be employed as a seamstress as here-
tofore, and that she be paid by my executors, annually, until
that time, the sum of $50.   If she choose then, in 1875, to
go to a free State and be emancipated, my executors are di-
rected to carry out her determination, and to invest and se-
cure for her use as they may think best, the sum of $2,000,
to be raised out of my estate, the interest of which she is to re-
ceive during life, and then her son John, if in life, is to have
the benefit of said investment absolutely.   If said slave Lou-
isa shall determine not to go to a free State then I give her
to my son-in-law, Moses P. Green, if in life, or if not, to any.

one of the children or descendants of my daughter Martha that said slave may select as her owner."

The will was admitted to probate on May 7th, 1853, and Moses P. Green qualified as executor. At November Term 1855 of Burke Superior Court, a decree was rendered upon said will, at the instance of the legatees, containing the following provisions, to wit:

"That said defendant, under the direction of Thomas M. Berrien and Andrew J. Miller, solicitors in this case, make such provision and investment for the slaves John, Adam, Mariah and Louisa, and such disposition of any of them as will substatially carry out the provisions of said will in relation to them."

"That said defendant proceed to sell all the lands of said deceased in the county of Burke, and all the negro slaves thereon, Adam, Mariah, John and Louisa excepted, at such time or times, place or places, upon such public notice and upon such terms as he may agree on with said solicitors, and that after paying all debts, legacies, the solicitors' fees and Court costs in the suit, and making the investments provided in this decree, the residue of the proceeds of such sale shall be invested by the defendant under the direction of said solicitors in State stocks, or other stocks or securities, for the uses and purposes specified in the will of said deceased. That said defendant report annually to this Court his action under this decree, and that the further aid and direction of the Court be given if necessary from any cause or difficulty in carrying out the same."

The complainant, who was the slave referred to as John in said will and decree, became twenty one years of age on the ........ day of February, 1862, and his mother Louisa died in 1858 or 1859. The defendant made sales of the property of the estate to the amount of $109,000, made no investment of the funds as required by the decree, and has made no returns to the Court. The defendant bought in most if not all of the real estate and now holds the same, to-wit: the "House tract" containing three thousand six hundred

Anderson *vs.* Green.

and eighty-seven acres, the "Eighty-three Station tract" containing one thousand five hundred and one acres, and the "Nesbit tract" containing ......... acres.

The defendant had failed to pay the legacies to complainant or to his mother, and had failed to make any provision for the execution of the bequest in the bill as to them. He had also failed to carry out the provisions of the decree of 1855 as to them. The bill prayed that the defendant be required to pay to complainant the legacies to him and to his mother, with the accumulated interest thereon, and also for discovery.

The answer denied that it was the intention of the testator that the bequest in favor of complainant should be carried out literally, as expressed in said will; that defendant had always claimed complainant as his slave until he was emancipated at the close of the late war; that testator intended that complainant, who was then of tender years, should remain with his mother until the time when, by the terms of said will, she was permitted to exercise her choice whether she would go to a free State herself, or remain, he believing, from her expressed opposition, she would never consent to go; that then, if said Louisa decided not to go to such free State, the complainant and his said mother were to remain in this State, under the protection of defendant, be free and enjoy the bequests, so far as it was possible for them to do; that, in the meantime, testator desired that complainant and his mother should be as free as defendant could make them, without endangering their safety, under the laws then of force; that testator expressed his secret wishes and instructions respecting complainant and his mother repeatedly, both before and after the execution of the will, and earnestly and solemnly enjoined upon this defendant the special trust and confidence that he would execute the same, so far as they were concerned, not as therein directed, but according to his wishes and intentions so expressed to this defendant; that defendant paid to Louisa, annually, the sum directed by said will; that the 6th and 7th items of said will were void, as contrary to the public policy of the State; that, inasmuch as Louisa died

at the time set forth in the bill, the contingency upon which she was to have and receive the legacy of $2,000 never happened, and therefore complainant acquired no interest in the same; that the sale under said decree was made, as charged, for the sum mentioned, but only a portion of said sale was for cash, and the remainder on a credit of one and two years, and that all the funds collected were expended in the payment of the debts of the deceased, except a part of the credit proceeds, which was invested by him in notes, mortgages and judgments, for the benefit of the estate, and a part of which is now in his hands, in shape of Confederate bonds; that defendant did purchase some of the property sold, through another, and is now in possession of the same, but that the full market value was paid for all property thus bought by him; that defendant made his annual returns to the Court of Ordinary of Burke county regularly until the year 1859, after which time, receiving nothing on account of said estate, the returns were discontinued; that, as executor of deceased, he has fully administered all and singular the goods and chattels, rights, credits and effects which were of the estate of the said Augustus H. Anderson, deceased, at the time of his death, and which came to the hands of defendant to be administered. That there is now due by said estate a trust debt in favor of Augustus H. Anderson, in right of his wife, Susan J. Anderson, amounting, originally, to $........., which has been reduced, by payments, to $.........; that, by the 8th item of said will, testator bequeathed to defendant the privilege of using, free from charge, all the lands loaned to him by testator in his lifetime, until January 1st, 1875, and that, by the decree of 1855, defendant was allowed to retain, for his own use, such sum as should, in the opinion of the solicitors named, be a sufficient consideration for the release of the privilege bequeathed to him; that defendant made such release, but said solicitors failed to make the aforesaid estimate; that said lands were of the value of $20,000 at the date of said decree, and of the yearly value of $2,000, making, for the twenty years intervening between the date of

said decree and the year 1875, the sum of $40,000, besides interest due to this defendant for the release aforesaid.

That defendant denies that he owns the "Nesbit tract" of land as charged.

That if complainant be entitled to a decree for any amount defendant prays that it may be taken against the assets of the estate remaining in his hands as executor; that said decree may be taken subject to the aforesaid trust debt of Augustus H. Anderson, in right of his wife, Susan J. Anderson; that if the aforesaid assets may prove insufficient, that the legacy in favor of the complainant may abate *pro rata* with that of this defendant.

The evidence is unnecessary to an understanding of the questions of law passed upon by the Court, as the facts of the case are fully reported in the bill, answer and motion for a new trial.

The jury returned the following verdict: "We, the jury, find the sum of $5,000 with legal interest thereon from the 24th day of November, 1855, for the complainant, John Anderson, to be raised out of the estate of A. H. Anderson, deceased, in the hands of M. P. Green, executor."

Upon this verdict the Court entered the following decree:

"Whereupon it is considered, adjudged and decreed that the complainant, John Anderson, do recover from the assets of the estate of A. H. Anderson, as shown to be in the hands or control of Moses P. Green, the executor, by his plea and answer filed in the above cause, unadministered, the sum of $5,000 with legal interest thereon from the 24th day of November, 1855, until the same is fully paid, said interest to be computed as the Code designates for debts of this character; and as the exigencies of this case seem to demand, for the purpose of securing, if possible, the payment of said sum, and to fully protect the respondent from the future liability for said verdict;

"It is further ordered and decreed that said Moses P. Green do turn over and assign to S. A. Corker, as receiver of this Court, all of said assets shown by said answers and pleas to

be in his hands, within ten days from the adjournment of said Court, by him to be collected and appropriated to the payment of said verdict and decree, or as may be hereafter otherwise ordered by the Superior Court of Burke county; upon the turning over and assigning of said assets by said respondent to S. A. Corker, it is further ordered that said Stephen A. Corker do give to' said Moses P. Green a receipt in full discharge of all further liability therefor."

The defendant moved for a new trial upon the following grounds, and others to the number of thirty-seven, all embraced in those herein set forth, to-wit:

1st. Because the Court erred in requiring the defendant to strike from a panel of twenty-four jurors, one of whom was John P. C. Whitehead, said juror stating that he was deaf and unable to hear the evidence or anything that transpired in the Court; defendant requesting the Court to have another juror substituted in his place, which request the Court refused, thus necessitating defendant to strike him.

2d. Because Allen Boyd served as a juror throughout the trial of the cause when he had not been selected by either party as a juror, said Boyd answering to the name of John F. Elliott, who was selected by the counsel of both parties to try the cause, which fact was unknown to defendant or his counsel until the trial was at an end.

3d. Because said verdict is contrary to evidence and the principles of justice and equity.

4th. Because said verdict is contrary to the law and the evidence, for that the jury included in said verdict the legacy of $2,000 claimed for Louisa, mother of complainant, under the seventh item of the will of the testator, when the undisputed proof was that said Louisa died long anterior to the time when she was to make her election to go to a free State, it being a legacy entirely dependent upon her election in the year 1875 to go to a free State.

5th. Because the Court erred in excluding as evidence all that portion of defendant's answer which relates to the se-

cret trust imposed upon defendant by the testator, as not responsive to the bill.

6th. Because said verdict is contrary to the following charges of the Court, to-wit:

"If you believe from the evidence that there was a secret trust created by the testator in favor of the complainant and his mother, Louisa, under the 6th and 7th items of the will of Augustus H. Anderson, in violation of the laws of the State, existing at the time, in regard to the manumission of slaves, said items of the will are null and void, and the complainants cannot recover the legacies and bequests therein mentioned, and the verdict should be for the defendant.

"Parol testimony, or the evidence of the witnesses upon the stand, is admissible to prove the execution of a secret trust, having for its object the manumission of John and Louisa, in the State of Georgia, and the jury is permitted to consider such evidence, and if satisfied therefrom that such secret trust existed in violation of law, they should find for the defendant.

"Gifts of property or money to a slave, under the laws of Georgia, existing at the time when this will took. effect, are void, and cannot confer any right upon such slave, either to hold or receive said property or money, or to maintain a suit therefor.

"The emancipation of slaves, as the result of the late war, does not and cannot confer upon persons of color any rights as slaves which they did not possess prior to their emancipation.

"The question of the existence of a secret trust, as relied upon by the defendant in this case, has never been adjudicated, either on the probate of the will before the Court of Ordinary, or by the decree of 1855, and defendant is not estopped by either of said proceedings from setting up the same.

"Estoppels, to be binding, must be mutual, and if a judgment is relied on, it must appear that the judgment was between the same parties, was in relation to the same subject

matter, that the identical point has been decided, and that the decision was by a Court of competent jurisdiction.

"The statute of limitations does not run against any person until there is an assertion of an adverse right or claim on the part of the person claiming the benefit of the statute, and as complainant did not and could not have made his claim against the defendant until emancipation, the statute of limitations is not operative in this case against the defendant, and he is not barred thereby from setting up in his behalf the secret trust upon which he relies, or any other good and legal defense to the demand of the complainant.

"A will, originally void, cannot be cured by the statute of limitations, and if the jury believe from the evidence that the secret trust existed, as claimed by the respondent, the 6th and 7th items of this will were not only void at the time the will took effect, but they are still void and of no effect.

"The general principle of law is, that all just debts due by deceased or his estate must first be paid before legacies, the maxim being that a man must be just before he is liberal.

"If, from the evidence, you believe that Green, executor, managed the estate as a prudent man would manage his own business, and in good faith, and that the assets were good and solvent at the time he received them, and that he made investments under the advice of his solicitors named in the decree, he cannot be charged with personal responsibility by reason of said assets being now insolvent.

"The administrator may exercise his discretion in demanding cash or extending credit. Full notice should be given, and the best interest of the estate observed. If credit is given, the administrator must, at his own risk, determine the sufficiency of the security given. If the security taken is ample at the time, and, subsequently, the debt is lost, after the utmost diligence by the administrator, he will not be responsible for the amount."

7th. Because the Court erred in modifying and adding to the following written requests to charge of defendant:

"The validity of the 6th and 7th items of the will must

Anderson *vs.* Green.

be determined by the laws existing when it took effect, and not the laws as they now exist. If void then, it is void now, and the fact of emancipation and the changed condition of persons of color cannot avail the complainant in this case." To which the Court made the following addition, to-wit: "but the Court has doubts whether this is the law."

"The defendant is not estopped by the probate of the will before the Court of Ordinary, nor by the decree of 1855, from setting up a secret trust, having for its object the conferring of freedom, or *quasi* freedom, upon John and Louisa, in this State, if such secret trust existed." The Court charged as requested, but added that, "the jury should require convincing and positive evidence of such secret trust."

"That Louisa's interest of $2,000 was a contingent interest and not a vested interest, and could not, by the terms of the will, vest until she should, in 1875, make her election to go to a free State." The Court charged as requested, but added: "I give you this in charge unless you find that the time was shortened by the decree of 1855."

"That as the contingency upon which she was to get the $2,000 never happened by reason of her death, there can now be no recovery of the same by John, the remainderman." The Court charged as requested, but added: "I give you this in charge, unless you find that the time was shortened by the decree of 1855."

8th. Because the Court erred in the following charges to the jury:

"The defendant is personally responsible for all debts lost by the estate and which he did not secure.

"The complainant claims the legacy given to himself in the sixth item of the will as well as that given in the seventh item, and if the jury find from the evidence that it was the intention of the testator that John should receive these legacies, it was, when the will was probated, and still remains the duty of the executor to pay said legacies.

"The trusts created in this will in favor of John and

Louisa, his mother, were legal trusts, as they did not contravene the policy or violate any law of this State.

"If you find that there is a contest before you about two wills of Augustus H. Anderson, one a written will, duly executed and probated under one law, and contravening no public policy, nor violating any law of this State; the other an unwritten will, and having but one witness, and contravening by its terms both the policy and the law of the State, it will be for you to determine under the evidence which really indicated and faithfully represented the intention of the testator; that is to determine the question, and the law presumes in favor of a legal intention.

"If you find from the evidence that Green, as executor, either in person or through another, bought lands at his own sale, neither the legatees nor the testator's estate are estopped thereby, but may repudiate his purchase so far as their rights are to be effected thereby, and he holds said lands subject to their rightful claims.

"If you find from the evidence there has been no complete administration of the assets of the estate, then this plea of defendant fails, and your verdict may also be against the assets in his hands to be administered, or in default of such assets against his personal goods. You are at liberty under the Code to so mould your verdict as to effectually give the relief for which complainant prays.

"An executor had no right during the war to invest in Confederate bonds without first getting an order for that purpose from the Superior Court, nor had he the right to let out moneys of the estate without good security, and if a loss accrues from his neglect in these respects he is responsible for that loss.

9th. Because the Court erred in refusing to charge the following written request, to-wit:

"To establish such secret trust it is not necessary for the defendant to prove that the testator intended to free John and Louisa in this State absolutely. It is sufficient if they believe from the evidence that he attempted to change their

condition in this State in any degree, from that of slavery, and if they believe from the testimony that the testator attempted to confer upon them any of the rights of freemen, such as to hold property or enjoy any of the benefits of freedom in this State, such attempt on the part of the testator vitiates the provisions of the will in favor of John and Louisa, and they are absolutely void, and the complainant cannot recover.

"If the defendant is barred by the statute of limitations so also is the complainant, and his demand as set forth in his bill is barred by the statute and cannot be enforced against the defendant."

"The complainant has waived the statute of limitations, and also the doctrine of estoppel, by filing a bill for discovery, and calling on the respondent to answer in regard to all the matters therein set forth, and he cannot urge them now against the defendant."

10th. Because said verdict is contrary to the following charge of the Court, to-wit:

"If you believe from the evidence that Green has fully administered the estate of Anderson, and that the schedule presented constitutes the assets of the estate, then, whatever recovery can be had (if any) must be against these assets and such as may hereafter come to his hands to be administered, subject to be first abated by the two debts set up in the defendant's answer, to-wit: The debt due to the wife of Augustus H. Anderson, Jr., and the debt due Green himself, the jury first being satisfied from the proof that said debts are proper charges against said estate, and provided there has been no mismanagement on the part of the executor."

11th. Because said verdict is contrary to the law and the evidence, for that the jury in returning said verdict failed to allow and make provision therein for the payment of the debt to Susan J. Anderson, and the claim or demand due to defendant under testator's will.

12th. Because the Court erred in dismissing the plea of

Anderson *vs.* Green.

relief filed by defendant under the Act of the Legislature, approved October 13th, 1870.

13th. Because the name of William C. Palmer, one of the jurors who tried the cause, is not upon the jury list of the county, which fact was unknown to defendant until after trial.

14th. Because said verdict as rendered does not comprehend the issues submitted by the pleadings in the cause, several of the jury stating in their places while returning said verdict, and before it was entered on the minutes of the Court, that they desired thereby only to subject the assets admitted by the defendant in his answer to be in his hands unadministered, to the payment of the amount found by them for complainant, and that they did not intend by their verdict to make the executor personally liable.

15th. Because the Court erred in refusing to direct the jury, as requested by defendant's counsel, to retire and so amend their verdict as to make it express their meaning with reference to the defendant's plea of *plene administravit præter*.

At the hearing of the above motion for a new trial, complainant moved the Court to reform and correct the decree rendered upon the verdict returned by the jury, and substitute in lieu thereof one which followed the verdict in terms of the law. The motion was overruled and complainant excepted.

A similar motion was made pending the motion for a new trial, which was overruled and the decision carried to the Supreme Court, where the writ of error was dismissed as having been prematurely brought.

The two last grounds of new trial are based upon the following facts, to-wit: When the verdict was returned by the jury, counsel for defendant asked them if they intended to find defendant individually liable for the amount of the verdict? One or two of the jurors responded that they did not. Considerable confusion ensued, during which others of the jury said that they were satisfied with the verdict. Upon the motion for a new trial the affidavits of some of the jurors

Anderson *vs.* Green.

were sought to be used to show what they intended by their verdict.

The motion was sustained and a new trial ordered.

To all of which rulings complainant excepted and assigns the same as error.

E. F. LAWSON; HOOK & GARDNER, for plaintiff in error.

J. J. JONES; A. M. RODGERS, for defendant. 1st. The 7th item of the will is void: Act of 1818; Cobb's Digest, 991; 30 Ga. R., 253; 6 Ga. R., 539; 26 Ga. R., 225; 20 Ga. R., 338. 2d. The expression of the Court of doubts as to the law in his charge was error: 8 Ga. R., 258; 38 Ga. R., 304; 29 Ga. R., 36; 34 Ga. R., 458. 3d. "Positive and convincing evidence" was not necessary to establish secret trust: 1 Green. on Ev., sec. 1; 7 Ga. R., 467; Code, sec. 3696; 29 Ga. R., 285. 4th. Estoppels are odious: 1 Serg. & Rawle, R., 442. Must be mutual: 23 Ga. R., 521. 5. The legal existence of the 6th and 7th items of the will is in issue. 6. A void judgment may be attacked anywhere, at any time: Code, secs. 3536, 3776. Executor is not estopped by probate of will from moving to set aside: 23 Ga. R., 521; Code, sec. 3700. Liability of executor for loss of debts: 2d. Wms. Ex., 1647; 37 Ga. R., 205; *Ibid.*, 230. 7. Discretion of Superior Court not interfered with: 26 Ga. R., 164; 37 Ga. R., 557. 8. Motion to reform decree came too late: 43 Ga. R., 568.

MONTGOMERY, Judge.

1. For the sake of convenience, I will consider the first and twenty-first points decided by the Court, together. To permit a party against whom a verdict is rendered, when it is plain and unambiguous in its terms and legal effect, to examine the jury as to their meaning, is to give great advantage to a litigant of influence and position in his county, when opposed by one of little or no influence. The jury room is the proper place for the jurors to give their views as

to what the verdict should be, and having there come to a conclusion as to the rights of the parties, they have but one more duty to perform, and that is to return their finding into Court. To suffer the jurors to be interrogated as to what legal effect their verdict is to have, is closely allied to, if not identical with, calling a juror to impeach a verdict rendered by him. To justify such a course, the verdict must, at least, be so ambiguous as to convey no definite meaning upon one or more of the issues involved. An award and a verdict have been held by this Court as very analagous to each other. In *Goodin et al. vs. Mitchell et al.*, 3 *Moore*, 241, (4 E. C. L. R., 432,) the Court of Common Pleas held that, " if the terms of an award be clear upon the face of it, the Court will not admit an affidavit of one of the arbitrators to explain their intention." See *Settle vs. Allison*, 8 *Georgia*, 208, and quotation there found from *Spencer vs. Golter*, 1 *H. Bl.*, 79. In *Murphy vs. Griggs*, 41 *Georgia*, 464, this Court held it was no such error as entitled the party cast to a new trial, where the Court refused, on request of counsel, to ask the jury if they had agreed upon a verdict, unless counsel would state some legal reason for making the request. And the judgment of the Court below, granting a new trial on this ground, was reversed. The tendency of this case is to show that no unnecessary questions should be asked the jury, even by the Court, much less should counsel bring the pressure of public opinion to bear upon the jury by demanding, in open Court, from them, an explanation of the plain, unambiguous result of their deliberations in the jury room. Especially is this true in this case. The attempt of counsel was to show that the jury did not mean to hold the defendant personally liable. Their attention had been specifically called to this view of the case in the charge set forth in the tenth ground for new trial, and yet they had declined to find as therein instructed, as they should have done if they entertained the view that counsel, by his examination, was seeking to commit them to. Upon the whole, we see no substantial difference between the course pursued in this case and the calling upon a juror

to impeach a verdict rendered by him. And this has been repeatedly held by this Court to be inadmissible.

2. The main issue involved in the case was made by the defense of *plene administravit præter*, set up by the executor in his answer. The attention of the jury was distinctly called to this defense by the Court in his charge, and instructions given them how to find if they should sustain it. From the verdict, and by that alone we are to be guided, it is very plain that they did not sustain this defense. There can be no dispute that they have found a verdict for $5,000 and interest for complainant. Whenever an executor or administrator is sued and pleads *plene administravit præter*, and a verdict is had against him the judgment must necessarily be *de bonis testatoris et si non de bonis propriis*, or a judgment *quando* for the whole (if the assets admitted to be on hand are worthless) or a part of the amount found due, (if the assets in hand are available to some extent) accordingly as the verdict may be: Code 3515. Is it possible to enter a judgment *quando* on the verdict in this case? Every reasonable construction is to be adopted in favor of a verdict: 17 *Ga.*, 361. Would it not require a very unreasonable construction of this verdict to found the judgment *quando* upon it? Is it not plainly a finding of the issue presented by his defense against the executor? It is trifling to say the verdict means that $5,000 and interest are to be raised out of assets not worth five cents, with the exception of the Nesbit mortgage, which, if fully paid, will scarcely satisfy half the verdict, and the executor in his answer seems to rank this among his other insolvent assets. If the intention of the jury was to exonerate the defendant from personal liability, they should have found a verdict upon which a judgment *quando* could have been entered. The amount found is "to be be raised out of the estate of A. H. Anderson, deceased, in the hands of M. P. Green, executor," that is, in his hands now, when the verdict is rendered. But the defense of the executor was that he had no such amount in his hands. This verdict says as plainly as language can say that he did have,

or ought to have, and his own evidence shows that he did have. It will be remembered that the Court charged the jury, and charged them correctly, that "if you find from the evidence that Green, as executor, either in person or through another, bought lands at his own sale neither legates, or (nor) creditors of testator's estate are estopped thereby, but may repudiate his purchase, so far as their rights are to be affected thereby, and he holds said lands subject to their rightful claims." By defendant's own admission he "did purchase some of the property sold through another, and is now in possession of the same;" and it appears from his returns that said property consisted of three thousand six hundred and eighty-seven and four-tenths acres, which the executor, through another, bid off at $19,358 85. This property was not included in the assets admitted by the executor to be still in his hands as belonging to the estate. Here was one item alone then, after making due allowance for the depreciation in the value of the land by the results of the war, which would probably pay the amount found by the jury, and which they were justified in treating as assets in his hands under the charge. If it be said that he testifies that he paid all of this $19,358 to the debts of the estate, and is therefore equitably entitled to stand in the shoes of the creditors whom he paid, the reply is that by his own testimony the debts amounted only to some $50,000; that under the decree of November, 1855, he sold property to the amount of $109,-000, part cash, the balance on one and two years credit; that "the cash received from the various sales was applied to the payments of debts, *and there was not quite enough for that purpose.*" If the whole of his purchase is to be treated as cash received and included in the above statement, as it must be, as all the land was sold for cash, still he ultimately got in enough to pay all the debts and more, for he says in his testimony the schedule of assets now offered by him as all the assets remaining in his hands "represents the sale notes and *such funds as were received by witness in payment of the sale notes, and afterwards loaned out,*" etc. Conceding for the purposes

of the argument, that he might claim to stand in the shoes of the creditors whom he had thus paid with his private funds, yet he knew, or should have known, that the sale to himself was voidable, and the legatees could require of him to return the land to the estate and look to the cash assets for reimbursement for whatever amount he may have used of his private funds to pay the debts.  He chose to take the risk, and must abide by it.  It is true he does not state how much of these sale notes were paid, and so loaned out by him, but it appears from his own return of sales made by him on May 5th, 1857; that on the 12th, 13th and 14th of February, 1856, he sold $68,136 85 worth of land and negroes. All that he did not get in cash he took notes for, according to his own testimony.  In the schedule of assets which he now presents as the entire assets remaining in his hands, there are but five notes bearing date so early as February 12th, 13th and 14th, 1856, to-wit:  M. A. Thompson's, two notes for $268 each, dated February 12th, 1856; T. A. Parsons, note for $144 40, same date; I. B. Jones' note, of same date, for $43 60, and Ramsom Lewis' note, dated February 1st, 1856, for $698 34.

All the notes, then, which were given on the days of sale by the purchasers, were either paid or renewed, with the above insignficant exception.  In addition to the land and negroes, he sold, at the same time, personalty to the amount of $10,255 66, no one item of which sold for as much as $300; as the land sold for cash, it is presumed these small items were also sold in the same way, though that does not affirmatively appear.  In comparing the list of purchasers of the land and negroes with the list of makers of notes in the schedule of assets now set forth, very few of the purchasers' names appear in the present schedule, and those that do so appear, owe small amounts.  It would seem to follow that most of the original purchase notes have been paid by the makers, and not renewed, and that most of the notes now set forth in his schedule represent " such funds as were received by witness in payment of the sale notes, and afterwards

loaned out." Without pausing to make the exact calcula-
tion, it abundantly appears in this way that he must have
received in payment of the sale notes far more than he gave
for the land purchased by him, and the money so received, as
he testifies, he afterwards loaned out. How, then, does his
equitable claim, to be considered as subrogated to the rights
of those creditors whom he paid with the money bid for the
land, stand? He made a voidable purchase at his own sale;
he paid creditors with the money he bid. Afterwards, he re-
ceived, in cash, far more than enough to reimburse himself.
Instead of doing so, he loaned the money out and the bor-
rowers became insolvent. Who should lose, himself or the
legatees? Here, then, are assets, not admitted in his answer,
which his own evidence shows to be still in his hands.

It also appears from the credits upon A. H. Anderson's note
alone—such credits amounting to more than $16,000—that
the only debt now set up as existing against the estate could
have been canceled, or very nearly so, by the trustee cred-
itor as a debtor to the estate in his individual character. In-
stead of thus paying this debt, which is of the highest dig-
nity, this money seems also to have been loaned out and thus
lost. Who should suffer, the executor or the legatees? The
award of Charles J. Jenkins and Thomas M. Berrien, made
November 1853, makes the principal of this debt $8,120 82.
A. H. Anderson's note is dated June 13th, 1857. The first
credit on it is $9,405, without date. Two other credits, one
for $2,550, the other for $4,310 66, are also without date;
but by Anderson's receipts, dated in March and October, 1862,
we learn that the two last credits were appropriated to the
payment in full of all interest due upon the trust debt.
Why was not the other credit of $9,405, also paid to the
trust debt? Had it been, the debt would have been extin-
guished, or nearly so, after making allowance for a payment
presently to be noted.

If the excuse be that he paid it once to other creditors, the
reply still is, that he must have collected more than enough
from the sale notes given for the negroes sold in February,

1856, alone (not to notice later sales,) to pay all the debts left after appropriating the cash sales to that purpose, which cash he testifies was not quite enough to pay off all the debts. Here, then, seems to be a *devastavit* to the extent of the payment by Anderson. If he loaned it out, he did it at his own risk. If the payment to W. J. Rhodes, trustee of Mrs. S. J. Anderson, charged against the estate in the return for 1858, and amounting to $2,392 63, is to be taken as a part of this fund, somewhat over $7,000 is still not appropriated, as it should have been. It may or it may not have been a part of that fund; neither the date of the credit, nor of Rhode's voucher, is shown by the record. If the voucher antedates the credit, the payment to Rhodes is not a part of the latter. The claim of the executor to be a creditor, on the score of his surrender of the *usufruct* of the realty bequeathed to him, does not deserve serious consideration. If one legatee can so transform himself into a creditor, to the disadvantage of the others, and without their consent, it would be very easy for a legatee of an estate, unable to pay all the legacies, to get the advantage of the others, especially if he were executor. Again, whether we consider the executor bound by the decree of 1855, or by the will, each equally enjoin upon him to pay the complainant's expenses to a free State, and to educate and maintain him until he arrived at age, which occurred in 1862, at which time he was to invest $3,000 for him. This trust he refused to execute, and he cannot now set up the loss of the funds to exonerate himself, which occurred subsequent to the time during which the boy was to be educated and then provided for. The executor neglected his duty at his peril. Here, also, is a *devastavit* to the extent of the cost of maintenance and education, and $3,000, directed to be invested. Again, the defendant says, in one of the amendments to his answer, that he received, on the sale notes given for negroes and other property, the sum of $23,975, in Confederate treasury notes. He does not say *when* he received them. It is assumed that he did not do so after prudent men had de-

clined them in payment of debts due themselves.  He sold, on credit—

In January, 1859, perishable property to the
amount of.........................................$    651 93

In January, 1860, he sold land, on credit, to the
amount of.......................................  8,500 00

In March, 1859, he sold negroes, on credit, to
amount of about................................  8,500 00

In February, 1856, he sold negroes, on credit, to
the amount of............  ....................... 39,759 00

Total .........................................$57,413 93

Deduct the amount received on these notes in
Confederate money............................ 23,975 00

Remainder.....................................$33,438 93

received by him in gold, on his credit sales, before the war. Here is a fund ample enough to have paid the trust debt and the complainant's legacy in gold, besides the small amount of debts left unpaid after the proceeds of the cash sales had been appropriated to the payment of the debts.  If, instead of doing so, the executor loaned the money out, whose loss should it be if the borrowers became insolvent?  As little as the unpaid legatee can ask is, that he take the $23,975, received by him in Confederate money, in payment of the amount bid by him for the land purchased at his own sale, and which, he says, was used in payment of debts due by the estate.  If the estate owed money, and the creditors refused to receive Confederate money in payment, he should have refused to receive it in payment of the sale notes.  And he, at best, can only stand in the shoes of a creditor to the extent of his private funds used to pay the debts, and if willing to receive Confederate money for debts due the estate, should have been equally willing to receive the same currency in payment of the debt of the estate to him, created by his violation of duty in purchasing at his own sale.  The verdict, then, when viewed alone, being unambiguous in its terms, and, as we understand it, binding the executor personally to the extent

of the *devastavit* shown, and, when examined in the light of the evidence, being just such a verdict as should have been rendered, (upon the hypothesis that it is a finding against the defendant's defense of *plene administravit præter*,) we are of opinion that the complainant is entitled to a judgment thereon *de bonis testatoris et si non de bonis propriis*.

3. Such being the view we take of the verdict, it follows that the decree rendered thereon is erroneous and should be reformed so as to be made to correspond with the verdict: Code 3504, 4153; Rawlins *vs.* Shropshire, decided March 26th, 1872. Neither do we think that under the facts of this case the plaintiff in error is estopped from moving to reform the decree, nor from alleging error upon the refusal of the Chancellor to do so.

4. In one view of this case, the verdict is not for too much, even conceding that the complainant is not entitled to recover the $2,000 left to his mother for life, with remainder to himself. He was entitled to his freedom and eight years of schooling. He got the former by emancipation in 1865. The latter he has never received. We do not think $5,000 with interest thereon from November, 1854, an unreasonable price for twelve years of slavery, a deprivation of education, and three thousand dollars in cash, and the interest on the last mentioned sum from February, 1862, from which time complainant was entitled to the interest, as he then arrived at age. Nor are we prepared to say that he was not entitled to the $2,000 left to his mother for life, more especially after 1875, the time at which she was to make her election, (had she lived and emancipation had not in the mean time been brought about), as to whether she would go to a free State or not. If he had a vested remainder in it, then to fall in, it was surely worth something at the time of the verdict. Upon the whole, we are satisfied the verdict is not for more than, under the evidence, the complainant is entitled to recover.

To the fifth, sixth and seventh points decided by the Court, nothing need be added.

8th and 9th. Defendant complains of the ruling of the Court, that that part of his answer setting up a secret trust is not responsive to the bill.   While we do not think it is responsive, there is yet another reason for excluding it.   The defendant is estopped from setting it up.   It is said that estoppels must be mutual.   Granted.   The sufficient reply here is—this estoppel is mutual.   The complainant is as much bound by the judgment of the Court of Ordinary, declaring this paper writing to be the will of Augustus H. Anderson, as is the defendant.   The judgment of the Ordinary, probating a will, is a judgment *in rem*, and binds all the world, immediately, if in solemn form.   After seven years (minor heirs at law specially excepted by statute), if only in common form, even minor legatees (as such) are bound by the lapse of seven years, unless they be held to fall within the equity of section 2390, of the Code.

But supposing the executor could yet attack this will.   Can he do so collaterally in the present forum ?   Must he not go into the Court of Ordinary for that purpose.   I think so : Tarver *vs* Tarver, 9 Peters, 174 ;   Cowen & Hill's Notes to Phil. Ev., part 2, n. 42 ;   Code, 3700.

10. Nothing need be added to the tenth point decided by the Court.   Sections 2871 and 2875 of the Code are conclusive.

11. Very little need be said in support of the decision on the eleventh point.   If a legatee by filing a bill calling on an executor for a discovery, opened the door for the executor to attack the will, then all an executor, who had proved a will in solemn form, would have to do, in case he desired for any reason to reopen the judgment of probate, would be to refuse to execute the will, and force parties interested to file a bill against him, which must, in the nature of things, be a bill for discovery nine times out of ten.

12. Believing as we do the verdict to be for no more than the complainaant was entitled to recover, the charge of the Court as to complainant's right, under the decree of 1855, to

recover the $2,000 legacy left to his mother, conceding it to be error, is an immaterial one.

13. Had the executor performed his duty, and faithfully discharged the trusts of the will at the proper time, he would have had abundant assets for the purpose of giving complainant his maintenance, education and $3,000. The estate, when it passed into his hands, was worth more than $200,000, and perfectly solvent. He continuously refused to execute this trust from 1853 until the present time. The estate remained entirely solvent until the war closed. He cannot now shelter himself from personal liability, by the subsequent insolvency of the estate occuring long after he should have performed his trust.

14. In support of the 14th point decided, it is only necessary to refer to the decison made in this case, when once before brought to this Court, in 38 *Georgia*, 655.

15. The presumption of the law is in favor of the legality of testator's intention in making the will, and the will is valid on its face. The time has passed within which the executor could have attacked it as void, for the reasons set forth in his answer, even if he could do so at all collaterally.

16. It has been too repeatedly held, that a purchase by an executor at his own sale is voidable, at the election of a legatee, to require more than a statement of the proposition.

17. The defense of *plene administravit* having been relied on by the defendant, the charge quoted on this point was pertinent and correct.

18. The charge of the Court that the defendant had no right to invest the funds of the estate represented by him in Confederate securities without an order of Court, was made through an oversight on the part of Court and counsel in omitting to note the Act of March, 1864, allowing such investments of Confederate money on hand, prior to April 1st, 1864, without such an order. But this Act was passed near the close of the war, and long after the defendant, by his neglect to execute the trust, had rendered himself personally liable. The charge, therefore, was immaterial.

19. The Relief Act of 1870 expressly exempts from its benefits executors, and other trustees who have unfaithfully, or negligently mismanaged the property in their charge.

20. The thirty-fifth ground for new trial is as follows: "Because the name of William C. Palmer, one of the jurors who tried the case, is not upon the jury list of the county, as made up in conformity to the Act of the General Assembly, approved February 15th, 1865; which fact was unknown to the defendant or his counsel until after the trial and the verdict." Precisely this objection is made in *Gormley vs. Laramore,* 40 *Georgia,* 253; and the disqualification held to be one *propter defectum,* which must be taken advantage of "before the county has put itself to the trouble to try the case. The fact that the party objecting was not informed of the want of qualification of the juryman does not help the case. With proper diligence he could have been informed. The list is on file, subject to the inspection of all, and it is his own want of diligence that kept him in the dark."

Let the judgment of the Court below be reversed.